IN THE

# SUPREME COURT

OF THE

# STATE OF IDAHO.

(April 15, 1914.)

ELISHA STRONG et al., Appellants, v. LUCIUS P. BROWN et al., Respondents.

[140 Pac. 773.]

MINING EXCAVATIONS—NEGLIGENCE—DAMAGES.

1. It is lawful for the miner to sink holes, pits and shafts on mineral lands, and to do so is not of itself an act of negligence, and an excavation, pit or shaft made by a miner in the prosecution of his work is not of itself a nuisance.

2. The owner of a mining claim is not liable to the owner of livestock for damages resulting from livestock running at large falling into a pit, prospect hole or mining shaft left open by the miner, and the locator or owner of mining claims is not bound by law to fence or inclose the same in order to protect livestock running at large on the public domain from being injured by falling into the same.

APPEAL from the District Court of the Fifth Judicial District, in and for Bear Lake County. Hon. Alfred Budge, Judge.

Action for damages. Judgment for defendant. Plaintiff appeals. *Affirmed.*

T. L. Glenn, for Appellants.

All persons have a common interest in the grass on the public lands of the United States except in so far as the graz-

ing of sheep has been restricted by statute, and if the appellants in common with others had an interest in the grasses growing on the public domain and were entitled to graze their stock thereon, it was the duty of respondents to avoid creating any pitfalls on said public land and leaving them open or uninclosed, thus endangering both life and property. (*Sweet v. Ballentyne,* 8 Ida. 431, 69 Pac. 995; *Sifers v. Johnson,* 7 Ida. 798, 97 Am. St. 271, 65 Pac. 709, 54 L. R. A. 785; Cooley's Constitutional Lim., 6th ed., 704. *Commonwealth v. Alger,* 7 Cush. (Mass.) 53.) If the construction of a ditch is dangerous to travel, the digging of pits and leaving them uncovered or unfenced, whereby stock may fall therein and be killed or destroyed, constitutes a nuisance, especially on lands on which there is an implied right accorded by the United States to run or graze horses and cattle. (*City of Lewiston v. Booth,* 3 Ida. 692, 34 Pac. 809; Thomas on Negligence, p. 45.)

To create and maintain a nuisance dangerous to life or property is negligence *per se,* and such act is made punishable by our law; if one violates such law and injury results to either person or property of another, such wrongdoer is liable, criminally and civilly. (*Conway v. Monidah Trust Co.,* 47 Mont. 269, 132 Pac. 26.) "A mine owner is bound to so fence or guard the shaft openings as to prevent its being a source of danger to the cattle of the surface owner." (*Williams v. Groucott,* 4 Best & Sm. 149, 122 Eng. Reprint, 416; 15 Am. & Eng. Ency. Law, 589.)

"When one is engaged in an act which the circumstances indicate may be dangerous to others, and the event whose occurrence is necessary to make the act injurious can be readily seen as likely to occur under the circumstances, the defendant is liable if he does not take all the care which prudence may suggest to avoid the injury." (*McGrew v. Stone,* 53 Pa. 436; Webb's Pollock on Torts, p. 29; 1 Sedgwick on Damages, 8th ed., p. 28, sec. 29.)

Chas. E. Harris, for Respondents.

Idaho has no statute requiring the fencing or covering of excavations made by prospectors and miners on their own ground, and in the absence of statute the common law rules. (27 Cyc. 751; *Driscoll v. Clark,* 32 Mont. 172, 80 Pac. 1, 373; *Conway v. Monidah Trust Co.,* 47 Mont. 269, 132 Pac. 26; *Beinhorn v. Griswold,* 27 Mont. 79, 94 Am. St. 818, 69 Pac. 557, 59 L. R. A. 771; *Knight v. Abert,* 6 Pa. 472, 47 Am. Dec. 478, 49 Am. Dec. 261, notes.)

"The rightful use of one's own land may cause damage to another without any legal wrong." (*City of Bellcvue v. Daly,* 14 Ida. 545, 125 Am. St. 179, 94 Pac. 1036, 14 Ann. Cas. 1136, 15 L. R. A., N. S., 992.)

Negligence cannot be predicated upon one's lawful and ordinary use of his own premises. (*Schimberg v. Cutler,* 142 Fed. 701, 74 C. C. A. 33; 15 Current Law, 147, and cases there cited; *King v. Oregon Short Line Ry.,* 6 Ida. 306, 55 Pac. 665, 59 L. R. A. 209; *West v. Shaw,* 61 Wash. 227, 112 Pac. 243; *Smalley v. Rio Grande Western R. Co.,* 34 Utah, 423, 98 Pac. 311.) And in connection with trespassing: *Holt v. Spokane etc. Ry. Co.,* 4 Ida. 443, 40 Pac. 56; 29 Cyc. 442, 444; 5 Current Law, 116, and cases cited; *Oakes Mfg. Co. v. New York,* 206 N. Y. 221, 99 N. E. 540, 42 L. R. A. 286.

"Plaintiff cannot recover where the allegations of the complaint show that his own negligence was the proximate cause of the injury." (*Goure v. Storey,* 17 Ida. 352, 105 Pac. 794.)

The duty of the defendants must be shown by a statement of facts from which the duty follows as a matter of law. And after showing that duty the complaint must allege a breach of such duty. (29 Cyc. 556; *Schmidt v. Bauer,* 80 Cal. 565, 22 Pac. 256, 5 L. R. A. 580.)

AILSHIE, C. J.—This action was commenced to recover damages for the loss of livestock that were running on the public range and strayed on to the premises of the defendants and fell into certain "pits" or excavations that had been made on the defendants' premises in the prosecution of work on

their phosphate mines. A demurrer to the complaint was sustained and judgment of dismissal was entered and this appeal was thereupon prosecuted.

The only question arising, therefore, is as to the sufficiency of the complaint to state a cause of action. The material allegations thereof are as follows:

"2. That at all times herein mentioned the defendants were joint owners of and in possession of the following phosphate mining claims. (Here follows a description of the claims which are located in Bannock county.)

"3. That on the —— day of May, 1912, plaintiffs were and for some time prior thereto were the owners of, in possession of and entitled to the possession of the following described animals, to wit: (Here follows a description of the animals and allegations of the value thereof.) That in the month of April, 1912, the said mares and horses were turned upon the public range to graze, that so while on said range, the blue mare fell into a pit on said first claim and was killed thereby; that the gelding while so upon said range fell into a pit on said second claim and was killed thereby; that the said gray mare, while so upon said range, fell into a pit on said third claim, and was killed thereby; that the defendants in utter disregard of the rights of plaintiffs negligently, wrongfully and carelessly, after digging said pits, failed to inclose the same, so as to protect stock turned upon the range, and when said pits became filled with snow they were so hidden from view that the said horses walked into said pits and were thereby killed and destroyed to plaintiff's damage in the sum of five hundred and twenty-five dollars ($525.00)."

The important and material question in this case is whether a miner, prospector or land owner is guilty of negligence in leaving prospect holes, pits or shafts open and unfenced on the public domain or elsewhere upon mineral lands. In other words, must the miner and prospector fence and inclose prospect holes, pits and mining shafts and tunnels to protect livestock running at large from falling into them? In this case it stands admitted that the respondents were the owners and in possession of certain phosphate claims, and that they had

opened "pits" on these claims and the horses belonging to the appellants strayed on to the claims, fell into the pits and died.

The statutes of the United States authorize the prospector and miner to go upon the public domain and prospect for precious metals and locate mining claims, and the statutes require that certain work must be done, which includes digging a pit or sinking a shaft in order to hold such location. It is clear, therefore, that to make such excavation, either on a man's own land or upon the public domain, is not of itself a wrongful act, and the thing done does not of itself constitute a nuisance. The miner has a right to do these things, and that right is not one of sufferance or tolerance, but it is authorized by positive statute. On the other hand, under the laws of this state a man may allow his horses to run at large, and they may roam and graze wherever their instinct may lead them upon unfenced and uninclosed lands. In other words, the owner of unfenced or uninclosed land cannot maintain an action for damages against the owner of such stock because they happen to feed and graze upon his lands.

Neither the government of the United States nor the state of Idaho has enacted any statute requiring the locator of a mining claim to fence the same or to in any way protect or inclose any pits, shafts or excavations on such claim against livestock. In order for one to be liable for damages he must be guilty of some act of negligence. Such negligence may consist of omission or commission. It seems to us that when a mining claim is left unfenced, as between the owner thereof and the owner of grazing livestock, there exists concurrent risks. The owner of the mining claim incurs the risk of having livestock herd and graze over his land and claim, and he takes the chances of any incidental damages which they may do his property by reason of having free ingress thereto. On the other hand, the owner of such livestock, while he has the privilege of permitting his livestock to run at large and graze over the uninclosed property, takes the concurrent risk of such stock getting into dangerous places, falling into pits or excavations or getting into buildings or works belonging to the land owner and getting maimed or killed.

While the owner of such trespassing livestock cannot be held in damages by the owner of the real property unless the land has been lawfully inclosed, on the other hand, the owner of such realty should not be held liable for an injury which such trespassing animals may receive under such circumstances. The man who turns his livestock out on to the public range takes innumerable risks of their being killed or injured. The mountainous country is full of crags, canyons, pitfalls and innumerable places where they may as easily become injured as from falling into mining excavations. It would be a very dangerous precedent to establish in a state like this, where mining and prospecting are carried on by such a large number of people, to say that every miner and prospector must fence or in some way secure and protect every prospect hole, mining shaft and pit against roaming livestock. We cannot believe that the law imposes such an obligation.

This court, in considering the respective rights of property owners to enjoy the free, unrestricted use of their several properties, in the case of *City of Bellevue v. Daly,* 14 Ida. 545, 125 Am. St. 179, 94 Pac. 1036, 14 Ann. Cas. 1136, 15 L. R. A., N. S., 992, quoted with approval from Professor Beach as follows:

"It may be stated as a general proposition that every man has a right to the natural use and enjoyment of his property, and if, while lawfully in such use and enjoyment without negligence or malice on his part, an unavoidable loss occurs to his neighbor, it is *damnum absque injuria,* for the rightful use of one's own land may cause damage to another without any legal wrong."

Our attention has been called to but one case which seems to be in point on the facts under consideration in this case, and that is the case of *Beinhorn v. Griswold,* 27 Mont. 79. 94 Am. St. 818, 69 Pac. 557, 59 L. R. A. 771. There the defendant was the lessee of a mining claim and mill site. The property was not inclosed by any legal fence. He had placed upon the property a number of vats containing a solution of certain poisonous chemicals and water, and the plaintiff's cattle strayed on to the premises and drank of the solution and

died. The plaintiff thereupon commenced an action against the defendant to recover damages to the extent of the value of the cattle. The supreme court of Montana gave the matter a very thorough consideration, and reached the conclusion that the mine owner was not liable for damages, that he had committed no wrong or tort and was in no respect guilty of negligence, and should not be held for damages. In process of the court's discussion and consideration of this question it was said:

"This is his right, for the cattle are trespassing. The owners of domestic animals hold no servitude upon, or interest, temporary or permanent, in the open land of another, merely because it is open. If the land owner fails to 'fence out' cattle lawfully at large, he may not successfully complain of loss caused by such livestock straying upon his uninclosed land. For under these circumstances the trespass is condoned or excused—the law refuses to award damages. While the land owner, by omitting to fence, disables himself from invoking the remedy which is given to those who inclose their property with a legal fence, and while the cattle owner is thereby relieved from liability for casual trespasses, it is nevertheless true that the cattle owner has no right to pasture his cattle on the land of another, and that cattle thus wandering over such lands are not rightfully there. They are there merely by the forbearance, sufferance, or tolerance of the nonfencing land owner; there they may remain only by his tolerance. The cattle-owning plaintiff did not owe to the landowning defendant the duty to fence his cattle in. The latter did not owe to the former the duty to fence them out. Neither of them was under obligation to the other in that regard. The defendant is not liable in this action unless he was negligent. There cannot be negligence without breach of duty. Hence, manifestly, the defendant was not guilty of negligence in omitting to prevent the plaintiff's cattle from going upon his unfenced land."

The foregoing observations are peculiarly applicable to the facts of the case we have under consideration. We are satisfied that the trial court properly sustained the demurrer and

dismissed the action, and that under the allegations of the complaint the defendants were not liable for damages.

The judgment should be affirmed, and it is so ordered, with costs in favor of respondent.

Sullivan, J., concurs.

Petition for rehearing denied.