721 P.2d 215

**Donald EASLEY and David Easley, Plaintiffs-Appellants,**

**v.**

**R.W. LEE and Irene Lee, husband and wife, Defendants-Respondents.**

**No. 15525.**

Supreme Court of Idaho.

June 30, 1986.

**116**

Fred R. Palmer, Sandpoint, for plaintiffs-appellants.

Charlton Mills, Sandpoint, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from a summary judgment granted defendants-respondents Lee in an action brought for an injunction and damages for trespass by Lees' cattle on the property of plaintiffs-appellants Easley. We affirm.

The Easleys own approximately 300 acres of land in the west half of a section in Bonner County, and the Lees own approximately 300 acres in the east half of that section of land. The north-south center line of the section constitutes their common boundary line. In 1964 Brennen, Easleys' predecessor in interest, and the Lees built a fence along their common boundary line. The southern half of that fence was maintained by the Lees and the northern half maintained by Brennen. The Easleys purchased the Brennen property in 1972.

From 1964 to the present time the Lees have continued to maintain the southern half of the fence. In 1973 a fire burned a portion of the Easleys' land destroying the northern half of the common boundary fence and much of the fence along the northern boundary of the Easley land. The Easleys changed the use of the northern portion of their property from pasture land to a tree farm, and consequently the Easleys did not restore the destroyed fences. Following the destruction of the northern portion of the common boundary fence, the Lees' cattle began entering into the Easleys' property during periods of 1973 and 1984. There appears no question but what both the Easley and the Lee land constituted open range, and in 1975 the Easleys initiated steps to create a herd district which would include the Easleys' land but not the land of the Lees.

A hearing was held on a petition to create a herd district at which time the Lees objected to the creation of a herd district on the basis that the Easleys had not restored the fire-destroyed fence and hence the Easley land was not inclosed by a legal fence. The petition for the formation of the herd district stated: "Provided, the said district shall not apply to livestock, except swine, which shall roam, drift or stray from open range into the district, unless the district shall be inclosed by a lawful fence and cattle guards on roads penetrating said district." At the hearing the Easleys objected to the inclusion of the above-quoted language in the herd district petition, and thereafter the county commissioners, in an order creating the Freeman Lake Herd District, deleted the above-quoted language from the order creating the herd district.

The order creating the herd district did not include the land of the Lees, but did include the land of the Easleys. Hence, a portion of the outer boundary of the created herd district constituted the common boundary line of the Lee/Easley lands, running along the center line of the section. Hence, the Lees' land remained open range abutting directly against the Easleys' land which lay within a herd district.

The Lees' cattle continued to enter upon Easleys' land, and the Easleys filed this action seeking declaratory relief, injunctive relief, and damages. A hearing was held upon an order to show cause why a preliminary injunction should not issue restraining the Lees from allowing their cattle to enter upon the Easleys' land, and why the Lees should not be required to fence in their cattle. At the hearing on the order to show cause the facts were not in dispute and were stipulated to by the parties.

Following the hearing and based on the stipulated facts, the court held that the Lees' property was open range, that the order creating the herd district but omitting the requirement of a legal fence around the herd district was in conflict with statutory law, and hence the Lees could not be required to fence their cattle in but rather if a fence to keep the Lees' cattle off the Easleys' property was constructed it was the responsibility of the Easleys.

Thereafter the Lees moved for dismissal of the action, which motion was converted to one for summary judgment, which was granted in favor of the Lees on the basis of the above holdings of the district court. Although other peripheral issues remained, the district court certified the partial summary judgment for an appeal.

As above-noted, the facts herein are not in dispute, and through this summary judgment we deal with a question of law of first impression, *i.e.*, when open range land and herd district land meet at a common border between two landowners, which owner, if either, is required to construct a legal fence.

The stipulated facts presented by the parties do not indicate that the Lees' land is, or ever had been, inclosed, the court noting, "only a fence of sorts along the common boundary line of the properties," existed. The facts indicated that Lees' land is not within a city or village. The record indicates that livestock has been grazed or permitted to roam on Lees' land "by custom, license or otherwise since at least 1964."

I.C. § 25–2402(3) provides: "Open range means all uninclosed lands outside cities and villages upon which by custom, license or otherwise, livestock, excepting swine, are grazed or permitted to roam." Although the statute was amended in 1985, the above definition of open range was not altered. Hence, we hold the district court was correct in its ruling that the Lees' land was open range.

At common law it was the duty of an owner of livestock to fence his animals in, and an adjoining landowner had no duty to fence his property so as to prevent others' animals from entering it. *Maguire v. Yanke*, 99 Idaho 829, 590 P.2d 85 (1978). However, that English common law rule does not prevail in Idaho and the "fence out" rule prevails in this state wherein if a landowner's property is not within a herd district, and is outside a city or village, the landowner desiring to prevent animals of others from straying onto his property must fence them out. *See Kelly v. Easton*,

35 Idaho 340, 207 P. 129 (1922); *Strong v. Brown*, 26 Idaho 1, 140 P. 773 (1914).

Herd districts are a legislative exception to the "fence out" rule. A majority of the landowners of more than 50% of the land within a proposed district may petition county commissioners for the creation of a herd district. I.C. § 25–2403. It is held that a herd district provides an alternative to landowners who wish to protect their land from damage caused by roaming stock but do not wish, or cannot afford, to fence their land. *Maguire v. Yanke, supra.* Once a herd district is created, the rule of fencing out which requires landowners to keep out another's livestock by construction of a fence no longer applies. Rather, an owner of stock who allows animals to run at large in a herd district is guilty of a misdemeanor. I.C. § 25–2407. Additional civil liability is imposed for damage caused by trespasses of such animals without regard to the condition of the landowner's fence. I.C. § 25–2408.

The issue in the instant case revolves around I.C. § 25–2402, which provides that petitions for the formation of a herd district, "shall designate that the herd district shall not apply to nor cover livestock, excepting swine, which shall roam, drift or stray from open range into the district unless the district shall be inclosed by lawful fences." The petition for the formation of the herd district in the instant case contained that statutory language, and hence the creation of the herd district would not have prevented the Lees' cattle from roaming, drifting or straying from open range (Lees' land) into the district (Easleys' land), unless the district was inclosed by lawful fences.

However, upon the protest of the Easleys to the statutory language being included in the petition, such was stricken by the county commissioners and not included within the order forming the herd district. The Easleys point out that I.C. § 25–2404 allows the county commissioners to modify provisions of the petition to form the herd district. Hence, we are required

to decide whether the requirement of I.C. § 25–2402, requiring a herd district to be inclosed by a lawful fence, could, under the provisions of I.C. § 25–2404, be removed in the county commissioners' order forming the herd district. We hold that such statutory requirement could not be removed by modification of the county commissioners.

■ Court are empowered to resolve ambiguities in statutes by ascertaining and giving effect to legislative intent. *Nampa Lodge No. 1389 v. Smylie*, 71 Idaho 212, 229 P.2d 991 (1951). "The act should be construed in its entirety and as a whole for the purpose of ascertaining the legislative intent, and where different sections reflect light upon each other they are regarded as *in pari materia.*" *Id.* at 212, 229 P.2d at 991.

■ I.C. § 25–2402 was amended approximately ten years after any amendment to I.C. § 25–2404. Chapter 264 of the Idaho Session Laws of 1963 is entitled: "Relating to the creation of a herd district by omitting the requirement that a herd district shall include one or more voting precincts and requiring that such herd district shall include an area or district of the county; and providing for presently established herd districts and providing that herd districts shall not include open range and shall not apply to livestock, excepting swine, roaming, drifting or straying from open range unless the district shall be enclosed by lawful fences and cattle guards in roads penetrating the district and defining the term open range."

We hold that such 1963 legislative language evidences the legislative intent to exclude liability for livestock roaming into a herd district from open range unless the district is inclosed by a lawful fence. It would be illogical and incongruous for the legislature to require the fencing of a district to prevent entry of livestock from open range, and at the same time intend that county commissioners could waive or strike such requirement from an order forming a herd district. We hold, therefore, that a herd district, and the liabilities resulting from the formation of a herd district, do not apply to livestock, excepting swine, that roam, drift or stray from open range into the herd district, unless the herd district is inclosed by lawful fences and cattle guards in roads penetrating the district. Hence, the district court was correct in granting summary judgment in favor of the Lees.

The orders of the district court are affirmed; costs to respondents.

DONALDSON, C.J., and BISTLINE, J., concur.

BAKES, J., concurs in result.

HUNTLEY, J., dissents without opinion.